IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BILLY WOODS, # M-02055,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-1161-NJR |
| | ) | |
| **MAJOR ROSE,** | ) | |
| **ADAM DULLE,** | ) | |
| **EMILY BREWER,** | ) | |
| **ANESSA SHAW,** | ) | |
| **JANE DOE NURSES #1-4,** | ) | |
| **SUSAN WALKER,** | ) | |
| **and ANN LAHR,** | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate of the Illinois Department of Corrections currently incarcerated at Centralia Correctional Center ("Centralia"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants were deliberately indifferent to a serious medical condition. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

1

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

On September 9, 2017, Plaintiff was working at his job in the Dietary Department. (Doc. 1, p. 3). His supervisor, Dulle, instructed Plaintiff to operate the meat slicer machine. Plaintiff told Dulle that a wheel was missing from the slicer and it may not work properly, but Dulle told Plaintiff that it had not caused any problems and he should not worry about it. As

Plaintiff began cutting with the meat slicer, it jumped and cut off the top portion of Plaintiff's little finger on his left hand. (Doc. 1, pp. 3, 11). Dulle immediately sent Plaintiff to the Health Care Unit ("HCU").

Nurses Shaw, Jane Doe #1, and Jane Doe #2 examined Plaintiff's finger. (Doc. 1, pp. 3, 11). They poured saline water and peroxide on the injury to attempt to stop the bleeding, which caused severe pain. (Doc. 1, p. 4). Plaintiff asked Shaw if he would be sent to an outside hospital. Jane Doe Nurse #1, at Shaw's request, called Correctional Officer Rose to ask permission to send Plaintiff to a hospital, but Rose denied the request. Rose reportedly decided that the injury "did not meet the criteria for an emergency medical furlough." (Doc. 1, p. 4). Shaw threw away the severed tip of Plaintiff's finger after it was determined that Plaintiff would not be sent for outside treatment. (Doc. 1, pp. 7, 23). Plaintiff begged Shaw and the Jane Doe Nurses #1 and #2 to explain the situation to Rose so he might allow Plaintiff to go to the hospital, but they refused. Shaw bandaged Plaintiff's finger and sent him back to the Dietary area.

Officer Kilgore in Dietary noticed that Plaintiff's finger was "squirting out blood," and notified a sergeant, who immediately took Plaintiff back to the HCU. Nurses Brewer, Jane Doe #3, and Jane Doe #4 washed Plaintiff's finger with saline and peroxide again, and re-bandaged his finger. They instructed Plaintiff to keep the finger elevated and returned him to his housing unit. (Doc. 1, pp. 5, 12).

At around 9:00 p.m. that evening, Plaintiff notified the housing unit officer that his finger was bleeding uncontrollably through the bandage; Plaintiff was sent back to the HCU for the third time. Brewer and the Jane Doe Nurses #3 and #4 told him that nothing could be done, and that even changing the bandages could cause an infection. They sent him back to his cell without any treatment. (Doc. 1, p. 6).

The next day (September 10, 2017), Plaintiff was awakened by the pain, and he had blood running down his arm. (Doc. 1, pp. 6, 12). He was sent to the HCU where the same treatment was given. Later, blood began squirting through the bandage again, and he returned to the HCU. On Plaintiff's way to the HCU, Plaintiff told Sergeant Boyle that his finger was still bleeding. Boyle called the shift commander, Major MacAbee, who summoned Plaintiff to his office. (Doc. 1, p. 6). MacAbee looked at Plaintiff's finger, and immediately called the warden. The warden called in the Director of Nurses (Knebel) to examine Plaintiff's finger. When she did, she determined that emergency medical treatment was necessary, and Plaintiff was rushed to the hospital, where he received treatment. (Doc. 1, pp. 6-7, 13-18).

Plaintiff asserts that Rose's refusal to allow him to be sent to the hospital immediately after his injury caused him unnecessary pain and blood loss by delaying proper treatment. (Doc. 1, p. 7). Shaw, Brewer, and the Jane Doe Nurses #1-4 failed to properly treat his serious injury and delayed his access to necessary treatment. *Id.* Plaintiff asserts he continues to "experience painful complications in his left finger that often travels down to his hand" as a result of the injury and allegedly inadequate treatment. (Doc. 1, p. 8).

Plaintiff filed a grievance over the way his injury was handled, but Walker (grievance officer) denied it, as did Lahr (Administrative Review Board). (Doc. 1, p. 7, 19-21, 23-24).

He requests compensatory and punitive damages against all Defendants. (Doc. 1, p. 9).

### Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that

is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Dulle, for ordering Plaintiff to operate a defective meat slicer, which cut off the tip of Plaintiff's finger;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Rose, for denying permission for Plaintiff to be sent to an outside hospital for treatment at the request of nursing staff;
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Shaw, Brewer, and Jane Doe Nurses #1-4, for failing to properly treat Plaintiff's finger injury, and delaying his access to hospital treatment;
>
> **Count 4:** Eighth Amendment deliberate indifference claim against Walker and Lahr, for denying Plaintiff's grievance filed over the allegedly inadequate medical care given to him for the finger injury.

Counts 1-3 shall receive further consideration against some of the Defendants. Count 4 fails to state a claim upon which relief may be granted and shall be dismissed with prejudice.

## Count 1 – Dulle – Deliberate Indifference

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regards to any conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347

(1981).

The second requirement is a subjective element—establishing a defendant's culpable state of mind—which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

In this case, Plaintiff alleges that Dulle directed him to use the meat slicer machine, even though Plaintiff told him that a wheel was missing and it might not operate properly. Dulle dismissed Plaintiff's concerns about the safety of the machine, because it had not caused any problem so far. However, the machine "jumped" and caused serious injury to Plaintiff's finger. (Doc. 1, p. 3). Applying the legal standards outlined above, ordering a prisoner to use a defective slicing tool capable of cutting off a finger would create an objectively serious risk to the prisoner's safety and health, satisfying the first element of an Eighth Amendment claim. While the response to Plaintiff's grievance indicates some dispute over whether or not Dulle ordered or authorized Plaintiff to use the machine (Doc. 1, p. 23), at this early stage, Plaintiff's assertion that Dulle (his job supervisor) instructed him to use the machine shall be taken as true. *See Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011).

As to the second, subjective element, if Dulle was merely negligent in telling Plaintiff to use the meat slicer, no constitutional violation occurred. On the other hand, if Dulle knew that the machine's missing piece posed a substantial risk of injury to the operator, yet still ordered Plaintiff to use it, he could be found liable for deliberate indifference to Plaintiff's safety. Further

factual development will be necessary on this point, therefore, **Count 1** against Dulle survives threshold review under Section 1915A.

### Count 2 – Rose – Deliberate Indifference

An Eighth Amendment deliberate indifference claim with regard to a serious medical need likewise has two components. First, the prisoner must have suffered from an objectively serious medical condition. "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).

Secondly, the prison official must have known of a substantial risk of serious harm to the inmate from that condition, but acted or failed to act in disregard of that risk. "Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). While the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," it does require "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Plaintiff's injury—a laceration that completely severed the tip of his little finger—was an objectively serious condition requiring immediate medical attention. Nurse Shaw recognized this and directed Nurse Jane Doe #1 to contact Rose and request permission to send Plaintiff to an outside hospital. Rose denied this request, and as a result, Plaintiff was not taken to the hospital until late the following day. In the interim, he continued to experience severe bleeding and pain.

While the Complaint does not reveal exactly what Nurse Jane Doe #1 told Rose about Plaintiff's injury, the injury itself and the fact that a nurse recommended a trip to the hospital indicate that Rose was sufficiently informed of Plaintiff's serious medical need. Under these circumstances, Rose's refusal to allow the emergency furlough supports a claim against him for deliberate indifference. Furthermore, Plaintiff's documentation states that Rose's denial was the direct cause of the nurses' decision to discard Plaintiff's severed fingertip, which might have been sent to the hospital with him for possible reattachment, if Rose had allowed him to go. (Doc. 1, pp. 7, 23).

**Count 2** for deliberate indifference against Rose shall proceed for further review.

### Count 3 – Nurses – Deliberate Indifference

The medical deliberate indifference standards outlined in Count 2 apply equally to the nurses who were asked to treat Plaintiff's injury. Additionally, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

At Plaintiff's first visit to the HCU, Shaw, Jane Doe Nurse #1, and Jane Doe Nurse #2 gave him what appeared to be reasonable medical treatment for his injury. They also requested permission to send Plaintiff to an outside hospital. Those actions do not suggest deliberate indifference on their part to Plaintiff's medical needs. Plaintiff suggests that after Rose denied permission for the medical furlough, however, Shaw and the Jane Doe Nurses should have called Rose again in order to explain his situation and push Rose to change her mind and allow the hospital visit. Instead, Shaw told Plaintiff there was nothing else that could be done. It is possible that a deliberate indifference claim could be sustained on these facts. Therefore, Plaintiff may

proceed with his claim in Count 3 against Shaw and Jane Doe Nurses #1 and #2 for refusing to make further attempts to have Plaintiff sent to an outside hospital.

Plaintiff was seen twice by Brewer, Jane Doe Nurse #3, and Jane Doe Nurse #4. The first time, these nurses re-washed Plaintiff's finger and re-bandaged it, telling him to keep it elevated. (Doc. 1, p. 5). This, however, failed to stop the bleeding. When Plaintiff saw Brewer and the Jane Does some hours later, they gave him no further treatment and told him that changing the bandages could lead to an infection. While Plaintiff was dissatisfied with the initial treatment and the later decision not to change the bandages, these facts do not suggest that Brewer or Jane Doe Nurses #3 and #4 were deliberately indifferent to his medical needs. Instead, they appear to have given him treatment they believed to be appropriate under the circumstances to avoid placing him at risk of infection. If they were wrong in this assessment, this would amount to negligence or malpractice at worst.

Plaintiff does not say that he requested Brewer or Jane Does #3 or #4 to send him to the hospital or that they failed to provide him with pain medication, therefore there is no basis for a deliberate indifference claim against them with reference to those potential issues. At this time, the deliberate indifference claim in Count 3 against Brewer, Jane Doe Nurse #3, and Jane Doe Nurse #4 shall be dismissed without prejudice.

**Count 3** shall proceed only against Shaw, Jane Doe Nurse #1, and Jane Doe Nurse #2. However, Plaintiff must identify Jane Does #1 and #2 by name before the Complaint may be served on them.

**Dismissal of Count 4 – Grievance Officials – Deliberate Indifference**

The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v.*

*Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). In order to be held individually liable, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Thus, a prison official who has no involvement in a matter, other than denying a grievance that was filed to complain about the completed misconduct of another party, does not incur liability merely by handling the grievance.

According to Plaintiff's Complaint, Walker reviewed and denied his grievance over the denial/delay of medical care. Plaintiff filed the grievance on September 11, 2017, after he returned from being treated at the hospital. (Doc. 1, pp. 19-21, 23). Clearly, Walker had no knowledge of Plaintiff's injury or his attempts to obtain treatment until after the alleged unconstitutional conduct had occurred, and Walker took no part in the decision-making regarding whether Plaintiff would be sent to the outside hospital for treatment. Walker thus was not personally involved in any deliberate indifference toward Plaintiff's condition, and cannot be held liable based on her denial of the grievance.

Similarly, Lahr reviewed the denial of Plaintiff's grievance long after the alleged deliberate indifference occurred, and was not personally involved in any decisions regarding his medical treatment. The Complaint thus fails to state a claim upon which relief may be granted against either Walker or Lahr. **Count 4** shall therefore be dismissed with prejudice.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with his deliberate indifference claim in Count 3 against the Jane Doe Nurses #1 and #2. These Defendants must be identified with particularity,

however, before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

In this case, Plaintiff may direct his discovery requests aimed at identifying these unknown Defendants to Defendants Shaw and/or Rose, who interacted with the Jane Doe Nurses #1 and #2 when Plaintiff's claims arose, and who remain in the action. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the Jane Doe Nurses #1 and #2 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Disposition

**COUNT 4** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**BREWER** and the **JANE DOE NURSES #3 and #4** are **DISMISSED** from **Count 3** and from this action without prejudice. **WALKER** and **LAHR** are **DISMISSED** from this action with prejudice.

The Clerk of Court shall prepare for **ROSE, DULLE,** and **SHAW**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect

formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **JANE DOE NURSES #1 and #2** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a plan for discovery aimed at identifying the unknown defendants with particularity.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 22, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**